## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| ORBIS OPPORTUNITY FUND, LP, a Delaware Limited Partnership; ORBIS OPPORTUNITY FUND (CAYMAN), LP, a Cayman entity, | Case No.: |
| Plaintiffs, | |
| v. | |
| DAVID ALAN BOYER, an individual; SAVANNA LEASING LLC, a Florida limited liability company; JOEL PLASCO, an individual; PAUL MICHAEL PICKETT, an individual; ODYSSEY ENGINES, LLC, a Florida limited liability company; and DOES 1 through 50 inclusive, | |
| Defendants. | |

## COMPLAINT

Plaintiffs ORBIS OPPORTUNITY FUND, LP, a Delaware Limited Partnership and ORBIS OPPORTUNITY FUND (CAYMAN), LP, a Cayman entity, sue Defendants DAVID ALAN BOYER, SAVANNA LEASING LLC, JOEL PLASCO, PAUL MICHAEL PICKETT, ODESSEY ENGINES, LLC., and DOES 1, and allege as follows:

## THE PARTIES

1.      Plaintiff Orbis Opportunity Fund, LP (hereinafter referred to as "Orbis US") is, and at all material times hereto was, a Limited Partnership duly organized and existing under the laws of the State of Delaware, with its principal place of business in the County of Orange, State of California.

2.      Plaintiff Orbis Opportunity Fund (Cayman), LP (hereinafter referred to as "Orbis Cayman") is, and at all material times hereto was, a Limited Partnership duly organized and existing under the laws of the Cayman Islands, with its principal place of business in the County

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 22nd Floor, Citigroup Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

of Orange, State of California.  (Orbis US and Orbis Cayman shall be collectively referred to at times as "Plaintiffs" or "Orbis").

3.        Defendant David Alan Boyer (hereinafter referred to as "Boyer") is, and at all material times hereto was, an individual believed to be residing in Miami, Florida, and a principal, member, manager, officer and representative of the Defendant entities, as hereinafter identified below.

4.        Plaintiffs are informed and believe, and based thereon allege, that Defendant Savanna Leasing, LLC (hereinafter referred to as "Savanna") is, and at all material times hereto was, a limited liability company duly organized and existing under the laws of the State of Florida, with its principal place of business at 8050 NW 90th Street, Medley, Florida.

5.        Plaintiffs are informed and believe, and based thereon allege, that Defendant Paul Michael Pickett (hereinafter referred to as "Pickett") is an individual, whose residency is currently unknown.  However, Plaintiffs are informed and believe, and based thereon allege, that Pickett does business in the State of Florida, City of Miami, as an officer of the Defendant entities, acting in the capacity of Chief Financial Officer.

6.        Plaintiffs are informed and believe, and based thereon allege, that Defendant Joel Plasco (hereinafter referred to as "Plasco") is, and at all material times hereto was, an individual believed to be residing in New York, New York, and an officer, manager, member and principal of the Defendant entities, conducting business in the State of Florida, City of Miami.

7.        Defendant Odyssey Engines, LLC (hereinafter referred to as "Odyssey") is, and at all material times hereto was, a limited liability company duly organized and existing under the laws of the State of Florida, with its principal place of business in Miami, Florida.  Odyssey was formed on January 11, 2010 with the filing of its Articles with the Florida Secretary of State and has its principal place of business at 8050 NW 90th Street, Medley, Florida.

8.         The true names and capacities, whether individual, corporate, associate or otherwise of the Defendants named herein as DOES 1 through 50, inclusive, are unknown to Plaintiffs.  Plaintiffs, therefore, sue these Defendants by such fictitious names and will seek leave

2

of Court to amend their Complaint to show their true names and capacities when the same have been ascertained.

9.      Plaintiffs are informed and believe, and based thereon allege, that the Defendants, and each of them, including those alleged herein fictitiously, are the agents co-venturers, joint venturers, co-conspirators, employees or representatives of the other Defendants, and in acting in the manner alleged herein did so with the knowledge, ratification and consent of the other Defendants, and acted in concert with them. Plaintiffs are further informed and believe, and based thereon allege, that each of the Defendants named herein engaged in wrongful conduct that is a cause of Plaintiffs' damages, and were co-conspirators of the others, acting within the course and scope of such conspiracy.

## VENUE AND JURISDICTION

10.     This Court has subject matter jurisdiction over state law claims under 28 U.S.C. § 1332(a) because Plaintiffs seek damages in an amount in excess of the jurisdictional minimum of this Court, exclusive of interest and costs, and Defendants and each of their members and/or partners are residents of the State of Florida, or in the case of Plasco, a resident of the State of New York. Plaintiffs are residents of the State of Delaware and the Cayman Islands. No partner or limited partner of the Plaintiffs are Florida residents.

11.     This Court has personal jurisdiction over Defendants insofar as they reside in, were formed in, and/or conduct business in the State of Florida.

12.     Venue is proper in this Court under 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction in this district, and the claims arise from Defendants activities in this district.

## COMMON ALLEGATIONS

### A.      The Introduction.

13.     Beginning in or about 2017, Orbis' representatives, Maxim Shishlyannikov ("Shishlyannikov") and Vincent Ordonneau ("Ordonneau") were introduced to Boyer through

mutual acquaintances.  Orbis had been informed of the possibility of investing in the aviation industry, and that Boyer and his companies had experience in aviation engine purchase and leasing.

14.     Shishlyannikov and Ordonneau flew to Miami, Florida, and met with Boyer at Boyer's business, Odyssey Engines, LLC.  Plaintiffs are informed and believe, and based thereon allege, that Boyer operates through a web of entities, including Odyssey Engines, LLC ("Odyssey"), Savanna Leasing, LLC ("Savanna"), JMD Aviation, LLC, Turbine Engine Center, Inc., PCB Holding Aviation Holdings, LLC, Air Transport Technologies, Inc., SL Engines, LLC, Savanna Leasing LLC II, Odyssey Real Estate, LLC, JA Aerocell, LLC, Oscoda Engine Services Corp., Timeco Engine Center, Inc., and AB Financial Services, LLC, amongst others.  Plaintiffs were unaware of virtually all of these entities at the time of the discussions between Orbis and Boyer in 2017.

15.     According to Boyer, Turbine Engine Center, Inc. and Savanna are subsidiaries of Odyssey.  Odyssey is, apparently, merely a holding company.  The businesses are structured such that Turbine Engine Center maintains, repairs and overhauls commercial aviation engines which are owned by Odyssey.  Savanna owns, or at times leases the engines from third parties, which in turn are leased to commercial airlines.

16.     At their 2017 introductory meeting, Boyer introduced himself as the Chief Executive Officer of Odyssey and provided information to Shishlyannikov and Ordonneau relative to his and Odyssey's background in the aviation industry.  According to Boyer, Plasco is the majority owner of many of the entities, including the Defendant entities.  Pickett is the Chief Financial Officer of Savanna and Odyssey.  Plaintiffs are informed and believe, and based thereon allege, that Pickett, Plasco and Boyer controlled the receipt, deposit, use, distribution and dissemination of monies received by the various entities, including without limitation Savanna and Odyssey.

17.     At their introductory meeting, Boyer toured the Odyssey facilities with Shishlyannikov and Ordonneau, enticing them with information about the companies' successes,

and the potential for investing.  Orbis, which had no experience in the aviation market, was searching for viable investments, and was interested in investing a portion of Orbis' assets in the aviation industry.

18.     At the time of these early 2017 discussions, and in describing Odyssey's background, Boyer, through Odyssey, was managing sixty-five (65) engines, worth approximately $70 million dollars.  The parties discussed the possibility of Orbis' investing in commercial aviation engines with Odyssey that would be placed on lease and managed by Odyssey.

**B.      The Joint Venture**

19.     Orbis was impressed by Boyer's representations, presentation and proposal for Orbis to purchase engines, which would be leased to airlines and managed by Boyer's company, Odyssey.

20.     The discussions culminated into negotiations concerning a joint venture between Orbis and Odyssey.  The parties negotiated the terms of two (2) joint venture agreements, one between Orbis Cayman and Boyer's company, Savanna.  That joint venture was referred to as Juno Engines Cayman, LLC, and was memorialized in a Limited Liability Company Agreement of Juno Engines Cayman, LLC.  The second joint venture was between Orbis US and Savanna, and was memorialized in a separate joint venture agreement, referred to as Juno Engines U.S., LLC, the terms of which were set forth in a Limited Liability Company Agreement of Juno Engines U.S., LLC.

21.     Specifically, and as identified above, the joint venture between Orbis and Savanna took the form of two entities.  Juno Engines U.S., LLC, created on June 8, 2017, and Juno Engines Cayman, LLC, created on June 19, 2017 (The joint ventures were, and will be herein, collectively referred to as the "Juno" joint venture).  Juno was created for the purpose of the parties' purchase of aircraft engines, with the intent to then lease the engines to certain airlines, and thereafter divide the revenues from the leases.

22.     In the Juno joint venture, Orbis provided the capital and Odyssey, through its subsidiary Savanna, conducted the operations, which involved buying engines, leasing them to airlines, and then sharing the revenues from those leases with Orbis.

23.     Structurally, Orbis owned 100% of the Class A membership interests in Juno, and Savanna owned 100% of the Class B membership interests in Juno.  The Class A members were to receive a return of its contribution through the lease payments.

24.     Plaintiffs, collectively, provided $4.150 million in capital to purchase engines to lease to the airlines.  Orbis Cayman provided $2.9 million dollars, and Orbis US provided $1.250 million in contribution toward the joint venture and purchase of the engines.

25.     In or about June 2017, Orbis tendered the capital to Defendants, following which two (2) Pratt Whitney JT8D-219 engines were purchased for Juno U.S., and which were ultimately leased to Delta Airlines.  In addition, four (4) engines were purchased for the Juno Cayman joint venture, two (2) Pratt Whitney JT8D-219 engines, and two (2) General Electric/Safran CFM56-3C1 engines.  Two (2) of the engines purchased were leased to Indonesia PT Airfast, one (1) engine was leased to Ukraine International, and a final engine was leased to Blue Air Romania.

26.     Based upon the relationship between Savanna and the airlines, the Juno joint ventures leased the engines to Savanna, Odyssey's subsidiary.  Thereafter, Plaintiffs are informed and believe, and based thereon allege, that Savanna leased two of the engines to the end user, i.e Delta Airlines, and the remaining engines were leased through Juno Cayman, i.e. Indonesia PT Airfast, Ukraine International and Blue Air Romania.

27.     Generally, the parties' agreement, and joint venture terms, provided that Orbis would provide the capital for the purchase of the engines.  The engines would be leased to the airlines, and the lease payments would then be paid to a brokerage account for the benefit of the joint venture.  The brokerage account was in the name of National Alliance, an Austin, Texas brokerage firm, which would act as the custodian of the funds.  The funds would then be paid to the parties of the joint venture, in accordance with their agreed-upon respective interests in the joint venture, as provided in the joint venture agreements.

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 22nd Floor, Citigroup Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

28.     Plaintiffs are informed and believe, and based thereon allege, that National Alliance received a portion of the monies from the leasing of the engines which were the subject of the joint venture, and currently maintains, at least, the sum of $300,000.  Plaintiffs are further informed and believe, and based thereon allege, that Savanna has access to the National Alliance brokerage account, and the remaining monies deposited into the account.  The National Alliance brokerage account was ultimately closed, and funds in the account were not received.  However, Plaintiffs are informed that a balance remains in the National Alliance account, for the benefit of the Juno joint venture.  Such monies have not been tendered to the Plaintiffs, although Plaintiffs are entitled to such monies by virtue of the terms of the joint venture agreements, and despite Plaintiffs demands therefore.

29.     In addition to the National Alliance account, certain engine lease payments were made directly to Savanna, at Savanna's financial institutions, including Florida Community Bank (since acquired by Synovus), and possibly First Republic Bank.

30.     The limited liability operating agreements for the Juno entities appointed Savanna as the managing member for the joint ventures and limited liability companies, Juno U.S. and Juno Cayman.  Savanna was expressly represented to be controlled by Boyer and Plasco, and the CFO was Pickett.  The limited liability company agreements provided, respectively:

(a)     All Company assets shall be owned by the Company [Section 3.03];

(b)     All available cash of the Company, after allowance for all reasonable costs and expenses incurred by the Company and for such reasonable reserves as the Managing Member shall determine (the "Distributable Cash"), shall be distributed, on a monthly basis within thirty (30) days of the end of each calendar month [Section 5.02];

(c)     Payment shall be made on a waterfall basis, with Plaintiffs to receive distributions until their Cash Contribution was repaid, plus 1.5% of the Cash Contribution, and then eighty percent (80%) of all amounts after payment of the Cash Contribution and such interest thereon [Section 5.02];

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 22nd Floor, Citigroup Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

(d)     The Managing Member may not sell or exchange of all or substantially all of the assets of the Company [Section 6.02(a)];

(e)     The Managing Member may not use of any proceeds of the Cash Contribution for any purpose other than purchasing, repairing, maintaining, servicing, marketing and/or storing the Engines [Section 6.02(k)].

C.      **The Failure to Pay and Conversion of Funds**

31.     From in or about June 2017 until approximately September 2017, Savanna made certain distributions to Orbis in accordance with the joint venture agreements and payment waterfall terms.  However, beginning in or about September 2017, Savanna and Defendants failed to pay Plaintiffs their portion of the lease revenues from the leasing of the engines, and which were received from the airline clients pursuant to the lease agreements.

32.     After failing to receive payments, Plaintiffs made repeated demands of Defendants for compliance with the terms of the joint venture agreements.  Despite such demands, Defendants failed and refused to provide any of the proceeds from the leasing of airline engines to third parties.  Plaintiffs continued to complain about non-payment, and demanded compliance to pay distributions to Plaintiffs, as required under the terms of the joint venture agreements, but Defendants refused.

33.     In an attempt to rectify this dispute and amicably part ways, Plaintiffs and Boyer agreed that one of Boyer's other entities, JMD Aviation, would purchase Plaintiffs' interest in the joint venture for $4.568 million dollars.  The parties negotiated the terms of a purchase agreement for a lengthy period of time, into June 2018, whereby Boyer, through his entity JMD Aviation, was supposed to purchase Orbis' interests in the Juno joint venture entities.

34.     Pursuant to the terms of the proposed purchase agreement, JMD Aviation was required to pay Plaintiffs a combined amount of Four Million Five Hundred Sixty-Eight Thousand Dollars ($4,568,000) ("Purchase Amount") in exchange for all outstanding Class A membership interests in Juno Engines U.S., LLC and Juno Engines Cayman, LLC, currently held by Plaintiffs.  JMD Aviation, however, failed to fund any portion of the acquisition.  At the same time,

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 22nd Floor, Citigroup Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

Defendants failed and refused, and continue to fail and refuse, to remit any portion of the monies received to Plaintiffs from the leasing of the engines to third party airlines.

35. Plaintiffs are informed and believe, and based thereon allege, that the stated intent to purchase Plaintiffs' interest in the June joint ventures was merely a ruse and delay tactic. Unbeknownst to Plaintiffs, at the time the purchase agreement was executed, JMD Aviation did not have the funds necessary to consummate the transaction. Indeed, Defendants knew, but did not disclose the fact that when the agreement to purchase Plaintiffs' interest was being negotiated and ultimately signed, neither JMD Aviation nor the Plaintiffs had the funds necessary to fund the purchase transaction.

36. In addition, and also unbeknownst to Plaintiffs, the engines that were purchased with Plaintiffs' capital were taken out of service, damaged, or are no longer being leased. And, while two engines remain at Defendants' Odyssey facility, Defendants' sold two of the engines, without ever disclosing their intent to do so, for in excess of $1,000,000. Defendants collected those monies, and claim to be in possession of such funds, but intentionally met and agreed upon between themselves to retain possession and/or use some monies for their own personal benefit, and to the detriment of the Plaintiffs, all contrary to the terms of the joint venture agreement.

37. In short, Defendants enticed Plaintiffs into investing in the aviation industry, and then secured millions of dollars of Plaintiffs' capital in order to purchase six (6) aircraft engines. After doing so, Defendants made scant payments, and then failed to tender any lease payments or monies whatsoever. Then, and only shortly after Plaintiffs' funds were used to purchase the engines, the leases were terminated, engines were returned, and other engines were sold, all without Plaintiffs' knowledge. Defendants, then, kept all proceeds from the leasing and sale of engines for themselves, failing to remit monies to Plaintiffs pursuant to the parties' agreements, absconding with Plaintiffs' funds.

38. Based upon the conduct and actions of the Defendants, the timing of the purchase of the engines and thereafter failure to remit monies, Plaintiffs believe that the entire transaction was solely intended to defraud Plaintiffs, and secure for themselves and Defendants' own benefit

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 22nd Floor, Citigroup Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

the engines and funds resulting from the leasing of the engines, all to Plaintiffs' detriment.  This action, therefore, follows.

## FIRST CAUSE OF ACTION

### FRAUD – INTENTIONAL MISREPRESENTATION

### (Against Boyer, Odyssey, Savanna and DOES 1 through 20)

39.     Plaintiffs hereby incorporate, by this reference, each and every allegation set forth in paragraphs 1 through 38, inclusive, as if set forth in full.

40.     Beginning in or about early 2017, in an effort to induce Plaintiffs to enter into a joint venture and invest monies in commercial aviation engines with Odyssey that would be placed on lease and managed by Odyssey, Boyer, acting on behalf of Defendants Odyssey and Savanna, and as authorized by Odyssey and Savanna as their agent, orally represented to Plaintiffs, through their representatives Shishlyannikov and Ordonneau, that Odyssey had considerable experience in the aviation industry and was managing sixty-five (65) engines, worth approximately $70 million dollars.

41.      Defendants further orally represented to Plaintiffs, through their representatives Shishlyannikov and Ordonneau, that the joint venture would invest capital toward the purchase of aircraft engines, and Odyssey, through its subsidiary Savanna, would operate the business, purchase the commercial aviation engines, lease the commercial aviation engines to third party airlines and share the lease revenue between Plaintiffs and Defendants.  Defendants further represented that the parties would become members of the Juno entities, with operating agreements providing:

    (a)     All Company assets shall be owned by the Company [Section 3.03];

    (b)     All available cash of the Company, after allowance for all reasonable costs and expenses incurred by the Company and for such reasonable reserves as the Managing Member shall determine (the "Distributable Cash"), shall be distributed, on a monthly basis within thirty (30) days of the end of each

10

calendar month [Section 5.02];

(c)     Payment shall be made on a waterfall basis, with Plaintiffs to receive distributions until their Cash Contribution was repaid, plus 1.5% of the Cash Contribution, and then eighty percent (80%) of all amounts after payment of the Cash Contribution and such interest thereon [Section 5.02];

(d)     The Managing Member may not sell or exchange of all or substantially all of the assets of the Company [Section 6.02(a)];

(e)     The Managing Member may not use of any proceeds of the Cash Contribution for any purpose other than purchasing, repairing, maintaining, servicing, marketing and/or storing the Engines [Section 6.02(k)].

42.     Moreover, Defendants further orally represented that after the commercial aviation engines were leased to third-party airlines, the lease payments would then be paid to a brokerage account in the name of National Alliance, an Austin, Texas brokerage firm, who would then pay the proceeds to the parties to the joint venture, in accordance with their agreed-upon respective interests in the joint venture, as provided in the joint venture agreements.

43.     At the time of the representations made by the Defendants to Plaintiffs, the representations were untrue, and Defendants knew them to be untrue. Yet, Defendants made these representations with the intention of Plaintiffs relying upon them, and persuading and enticing Plaintiffs to invest in Defendants' venture.

44.     Plaintiffs were ignorant of the facts that were untrue, and were also ignorant of the fact that Defendants did not intend to honor their representations or comply with the terms of the operating agreements, but, instead, intended to take Plaintiffs' capital investment of $4,150,000 for their sole benefit and refuse to share the revenues from the leasing of commercial aviation engines. For instance, although the engines were purchased with Plaintiffs' monies, they were almost immediately returned from lease, were damaged, or were sold by Defendants without Plaintiffs' knowledge. Defendants made few payments to Plaintiffs, despite the terms of the parties' agreements, instead keeping the funds for themselves and Defendants' own use and

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 22nd Floor, Citigroup Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

benefit.

45.     In reliance upon such representations, Plaintiffs agreed to enter into the Juno joint ventures and make a capital investment of $4,150,000 into the Juno entities, and for the benefit of the Defendants.

46.     Had Defendants not made such representations, or had Plaintiffs been aware that the representations were untrue, Plaintiffs would have never entered into the Juno joint ventures, nor would they have made a capital investment of $4,150,000 into the Juno entities.

47.     At the time Defendants made such representations to Plaintiffs, Plaintiffs believed them to be true, and reasonably and justifiably relied upon the representations.  Defendants expressed their knowledge in the aviation industry, and thereafter used Plaintiffs' funds to purchase airline engines.  Plaintiffs were also given a tour of Defendants' warehouse and business establishments, and were persuaded that the Defendants were experienced, honest and trustworthy partners.

48.     Defendants, however, knew such representations to Plaintiffs were false at the time they were made.

49.     As a proximate result of Defendants' conduct, Plaintiffs have been damaged in an amount in excess of $4,150,000, but according to proof at trial.

50.     Defendants' conduct, as alleged herein, was malicious, oppressive, fraudulent, and despicable, and thereby entitles Plaintiffs to an award of punitive and exemplary damages, all according to proof at trial.

## SECOND CAUSE OF ACTION

### BREACH OF FIDUCIARY DUTY

### (Against Boyer, Plasco, Pickett, and DOES 5 through 25, inclusive)

51.     Plaintiffs hereby incorporate, by this reference, each and every allegation set forth in paragraphs 1 through 38, inclusive, as if set forth in full.

52.      At all times herein mentioned, Savannah was a member of Juno Engines U.S.,

LLC, and Juno Engines Cayman, LLC, and Defendants Boyer, Plasco and Pickett were officers and managers of the Defendant entities, Savanna and Odyssey.

53.     As a member, manager and officer in closely held limited liability companies, Defendants Boyer, Plasco and Pickett owed Juno Engines U.S., LLC, Juno Engines Cayman, LLC and Plaintiffs fiduciary duties at all relevant times, including the duty to refrain from taking any action that might harm Juno Engines U.S., LLC or Juno Engines Cayman, LLC.  Defendants owed Plaintiffs the highest duty of good faith, fairness, honesty, loyalty and full disclosure in all business dealings.

54.     Beginning in or about 2017, and continuing to the present, Defendants breached their fiduciary duties owed to Plaintiffs by taking improper actions which include, but are not limited to:

    a.  Failing to pay Plaintiffs their portion of the revenues from leasing commercial aviation engines to third parties;

    b.  Misappropriating monies due and owing to Plaintiffs of the revenues from leasing commercial aviation engines to third parties;

    c.  Failing to repair damaged engines and returning them to service;

    d.  Failing to account for the revenues and expenses relating to the joint ventures; and

    e.  Selling commercial aviation engines owned by June Engines U.S., LLC and Juno Engines Cayman, LLC without Plaintiffs' knowledge, consent or disclosure.

55.     As a direct and proximate result of Defendants' breaches of fiduciary duties, as alleged herein, Plaintiffs have suffered and will continue to suffer substantial damages, in the sum of $4,150,000, but according to proof at trial and in excess of the jurisdiction minimum of this court.

The aforementioned conduct of Defendants deprived Plaintiffs of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Plaintiffs to cruel and unjust hardship in conscious disregard of Plaintiffs' rights, so as to justify an award of exemplary and punitive damages.

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 22nd Floor, Citigroup Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

## THIRD CAUSE OF ACTION

### CONVERSION

### (Against All Defendants and DOES 5 through 25)

56.     Plaintiffs repeat, reallege and incorporate by this reference the allegations contained in paragraphs 1 through 49, inclusive, of this Complaint as if each such allegation were set forth herein in full.

57.     From on or about June 2017, Defendants used monies, in the amount of $4,150,000, from Plaintiffs to purchase airline engines to lease to third-parties.   Pursuant to the lease agreements, the airlines would tender lease payments to Savanna, following which the sums should have been paid to Plaintiffs pursuant to the parties' waterfall distributions under the joint venture agreements.

58.     The receipt of funds, as well as the decision whether to distribute monies, were managed, controlled and supervised by Boyer, Plasco and Pickett, as officers, directors, managers and members of Savanna and Odyssey.

59.     Defendants, jointly and severally, took possession of monies resulting from the lease of engines to third-parties, as well as monies derived from the sale engines.  Plaintiffs are informed and believe, and based thereon allege, that Defendants, collectively, received such funds and kept and used such monies for their own personal benefit, to the exclusion of Plaintiffs.  Defendants have failed and refused to tender such monies to Plaintiffs, despite multiple demands therefor.

60.     All told, Defendants are believed to have converted, for their own personal use and benefit an amount in excess of the jurisdictional minimum of this Court, all according to proof at trial, but in the millions of dollars.

61.     As a direct and proximate result, Plaintiffs have lost, and will continue to lose, the amount taken, stolen, and converted, in the sum of $4,150,000, all according to proof at trial, in addition to interest thereon.

62.     Plaintiffs are informed and believe, and based thereon allege, that Defendants' conduct, as above alleged, was intended to deprive Plaintiffs of their property, or to otherwise

14

cause injury, and was malicious, oppressive, despicable and/or fraudulent conduct that subjected Plaintiffs to a cruel and unjust hardship in conscious disregard of their rights, thereby justifying an award of exemplary and punitive damages.

## FOURTH CAUSE OF ACTION

### BREACH OF CONTRACT

### (Against SAVANNAH LEASING, LLC and DOES 15 through 50)

63.     Plaintiffs hereby incorporate, by this reference, each and every allegation set forth in paragraphs 1 through 38, inclusive, as if set forth in full.

64.     In or about June 2017, Plaintiffs and Savannah entered into limited liability company agreements for the Juno entities.

65.     Pursuant to the limited liability company agreements for the Juno entities, Plaintiffs and Savannah agreed that:

   a.   All Company assets shall be owned by the Company [Section 3.03];

   b.   All available cash of the Company, after allowance for all reasonable costs and expenses incurred by the Company and for such reasonable reserves as the Managing Member shall determine (the "Distributable Cash"), shall be distributed, on a monthly basis within thirty (30) days of the end of each calendar month [Section 5.02];

   c.   Payment shall be made on a waterfall basis, with Plaintiffs to receive distributions until their Cash Contribution was repaid, plus 1.5% of the Cash Contribution, and then eighty percent (80%) of all amounts after payment of the Cash Contribution and such interest thereon [Section 5.02];

   d.   The Managing Member may not sell or exchange of all or substantially all of the assets of the Company [Section 6.02(a)];

   e.   The Managing Member may not use of any proceeds of the Cash Contribution for any purpose other than purchasing, repairing, maintaining, servicing,

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 22nd Floor, Citigroup Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

marketing and/or storing the Engines [Section 6.02(k)].

66.     Plaintiffs performed all conditions, covenants and promises required on their part by the terms and conditions of the operating agreements.

67.     Beginning in or about 2017, and continuing thereafter, Savannah breached the terms of the operating agreements by: (a) failing to pay Plaintiffs their portion of the revenues from leasing commercial aviation engines to third parties; (b) misappropriating monies due and owing to Plaintiffs from the revenues from leasing commercial aviation engines to third parties; and (c) selling commercial aviation engines without Plaintiffs' knowledge, consent or disclosure, and then keeping the funds for themselves.

68.     As a direct and proximate cause of Savannah's breaches of the operating agreements, Plaintiffs have been damaged in excess of $4,150,000, but according to proof at trial.

69.     The contract between Plaintiffs and Savanna includes the right of the prevailing party to recover attorney's fees incurred in connection with a dispute or breach of the limited liability company agreements.  Plaintiffs will, therefore, seek an award of attorneys' fees incurred herein.

## FIFTH CAUSE OF ACTION

### NEGLIGENT MISREPRESENTATION

#### (As and Against Boyer, Savanna and Odyssey, and DOES 15 through 50)

71.     Plaintiffs hereby incorporate, by this reference, each and every allegation set forth in paragraphs 1 through 38, inclusive, as if set forth in full.

72.     Beginning in or about early 2017, in an effort to induce Plaintiffs to enter into a joint venture and invest monies in commercial aviation engines with Odyssey that would be placed on lease and managed by Odyssey, Boyer, acting on behalf of Defendants Odyssey and Savanna, represented to Plaintiffs that Odyssey had considerable experience in the aviation industry and was managing sixty-five (65) engines, worth approximately $70 million dollars.

73.      Defendants represented and proposed a joint venture whereby Plaintiffs would

16

invest capital in the total collective sum of $4,150,000, and Odyssey, through its subsidiary Savanna, would operate the business, purchase the commercial aviation engines, lease the commercial aviation engines to third party airlines and share the revenue between Plaintiffs and Defendants.  Defendants further represented that the parties would become members of the Juno entities, with operating and limited liability company agreements providing:

(a)     All Company assets shall be owned by the Company [Section 3.03];

(b)     All available cash of the Company, after allowance for all reasonable costs and expenses incurred by the Company and for such reasonable reserves as the Managing Member shall determine (the "Distributable Cash"), shall be distributed, on a monthly basis within thirty (30) days of the end of each calendar month [Section 5.02];

(c)     Payment shall be made on a waterfall basis, with Plaintiffs to receive distributions until their Cash Contribution was repaid, plus 1.5% of the Cash Contribution, and then eighty percent (80%) of all amounts after payment of the Cash Contribution and such interest thereon [Section 5.02];

(d)     The Managing Member may not sell or exchange of all or substantially all of the assets of the Company [Section 6.02(a)];

(e)     The Managing Member may not use of any proceeds of the Cash Contribution for any purpose other than purchasing, repairing, maintaining, servicing, marketing and/or storing the Engines [Section 6.02(k)].

71.     Defendants further represented that after the commercial aviation engines were leased to third-party airlines, the lease payments would then be paid to a brokerage account in the name of National Alliance, an Austin, Texas brokerage firm, who would then pay the proceeds to the parties to the joint venture in accordance with their agreed-upon respective interests in the joint venture, as provided in the joint venture agreements.

72.     At the time of the representations made, Defendants knew, or should have known, that the aforementioned representations were false, and made such representations, orally and in

writing, without any reasonable grounds for believing them to be accurate or true.

73.    At the time the representations were made, Plaintiffs were unaware at the representations made by Defendants were false, and reasonably and justifiably relied upon the representations.

74.    In reliance upon such representations, Plaintiffs agreed to enter into the Juno joint ventures and make a capital investment of $4,150,000 into the Juno entities.

75.    Had Defendants not made such representations, Plaintiffs would have never entered into the Juno joint ventures and make a capital investment of $4,150,000 into the Juno entities.

76.    As a proximate result of Defendants' conduct, Plaintiffs have been damaged in the amount of $4,150,000, but according to proof at trial.


## SIXTH CAUSE OF ACTION

### ACCOUNTING

### (Against Defendants and DOES 1 through 50)

77.    Plaintiffs hereby incorporate, by this reference, each and every allegation set forth in paragraphs 1 through 76, inclusive, as if set forth in full.

78.    Defendants are in possession of the financial books, assets and accounts of Juno Engines U.S., LLC and Juno Engines Cayman, LLC.  The assets, the sums of monies withdrawn, commercial aviation engines sold, and the income and expenses of Juno Engines U.S., LLC and Juno Engines Cayman, LLC, are unknown to Plaintiffs and cannot be ascertained without an accounting.

79.    Plaintiffs, therefore, demand a full and complete accounting of Juno Engines U.S., LLC and Juno Engines Cayman, LLC from June 2017 to the present.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 22nd Floor, Citigroup Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

## AS TO THE FIRST CAUSE OF ACTION

1.      For damages in excess of $4,150,000, but according to proof at trial;

2.      Consequential damages according to proof at trial;

3.      Pre-judgment and post-judgment interest;

4.      For an award of exemplary damages;


## AS TO THE SECOND CAUSE OF ACTION

1.      For damages in excess of $4,150,000, but according to proof at trial;

2.      Consequential damages according to proof at trial;

3.      For pre-judgment and post-judgment interest;

4.      For an award of exemplary damages;

5.      For an award of attorney' fees incurred herein, pursuant to the terms of the Operating Agreement;


## AS TO THE THIRD CAUSE OF ACTION

1.      For damages in excess of $4,150,000, but according to proof at trial;

2.      Consequential damages according to proof at trial;

3.      For pre-judgment and post-judgment interest;

4.      For an award of exemplary damages;

5.


## AS TO THE FOURTH CAUSE OF ACTION

1.      For damages in excess of $4,150,000, but according to proof at trial;

2.      For pre-judgment and post-judgment interest;

3.      For an award of attorney's fees incurred herein;


## AS TO THE FIFTH CAUSE OF ACTION

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 22nd Floor, Citigroup Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

1.      For damages in excess of $4,150,000, but according to proof at trial;

2.      For pre-judgment and post-judgment interest;

## AS TO THE SIXTH CAUSE OF ACTION

1.      For an accounting of the financial affairs of Juno Engines U.S., LLC and Juno Engines Cayman, LLC from June 2017 to the present;

## AS TO ALL CAUSES OF ACTION

1.      Court costs incurred herein;

2.      For such other and further relief as the court may deem proper.

## REQUEST FOR JURY TRIAL

Pursuant to the Federal Rules of Civil Procedure and Local Rules, Plaintiffs ORBIS OPPORTUNITY FUND, LP and ORBIS OPPORTUNITY FUND (CAYMAN), LP demand a trial by jury of all claims so triable.


Date:   November 13, 2019                    LEVINE KELLOGG LEHMAN
                                             SCHNEIDER + GROSSMAN LLP
                                             *Counsel for Plaintiffs*
                                             201 S. Biscayne Blvd., 22nd Floor
                                             Miami, Florida 33131-4301
                                             (305) 403-8788 Main
                                             (305) 403-8789 Facsimile

                                             By: */s/ Lawrence A. Kellogg, P.A.*
                                                 LAWRENCE A. KELLOGG, P.A.
                                                 Florida Bar No. 328601
                                                 Primary E-Mail:  lak@lklsg.com
                                                 Secondary E-Mail: ah@lklsg.com

                                             ECOFF CAMPAIN TITLES LLP
                                             *Counsel for Plaintiffs*
                                             (*pro hac vice pending*)
                                             201 S. Biscayne Blvd., 22nd Floor
                                             Beverly Hills, California 90212
                                             (310) 887-1850 Main
                                             (310) 887-1855 Facsimile

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 22nd Floor, Citigroup Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

By: /s/ Lawrence C. Ecoff
LAWRENCE C. ECOFF, ESQ.
SBN 143814
Primary E-Mail:  ecoff@ecoffaw.com
ALBERTO J. CAMPAIN, ESQ.
SBN 204068
Primary E-Mail:campain@ecofflaw.com