IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ORBIS OPPORTUNITY FUND, LP, a Delaware Limited Partnership; ORBIS OPPORTUNITY FUND (CAYMAN), LP, a Cayman entity,<br><br>       Plaintiffs,<br><br>   v.<br><br>DAVID ALAN BOYER, an individual; SAVANNA LEASING LLC, a Florida limited liability company; JOEL PLASCO, an individual; PAUL MICHAEL PICKETT, an individual; ODYSSEY ENGINES, LLC, a Florida limited liability company; and DOES 1 through 50 inclusive,<br><br>       Defendants. | C.A. No. 1:20-cv-00040-RGA |

## FIRST AMENDED COMPLAINT[1]

Plaintiffs ORBIS OPPORTUNITY FUND, LP, a Delaware Limited Partnership and ORBIS OPPORTUNITY FUND (CAYMAN), LP, a Cayman entity, sue Defendants DAVID ALAN BOYER, SAVANNA LEASING LLC, ODYSSEY ENGINES, LLC., and DOES 1 through 50, and allege as follows:

### THE PARTIES

1. Plaintiff Orbis Opportunity Fund, LP (hereinafter referred to as "Orbis US") is, and at all material times hereto was, a Limited Partnership duly organized and existing under the laws of the State of Delaware, with its principal place of business in the County of Orange, State of California.

2. Plaintiff Orbis Opportunity Fund (Cayman), LP (hereinafter referred to as "Orbis

---

[1] A red-lined copy of the First Amended Complaint is attached hereto indicating in what respect the pleading differs from the original Complaint.

1

Cayman") is, and at all material times hereto was, a Limited Partnership duly organized and existing under the laws of the Cayman Islands, with its principal place of business in the County of Orange, State of California.  (Orbis US and Orbis Cayman shall be collectively referred to at times as "Plaintiffs" or "Orbis").

3. Defendant David Alan Boyer (hereinafter referred to as "Boyer") is, and at all material times hereto was, an individual believed to be residing in Miami, Florida, and a principal, member, manager, officer and representative of the Defendant entities, as hereinafter identified below.

4. Plaintiffs are informed and believe, and based thereon allege, that Defendant Savanna Leasing, LLC (hereinafter referred to as "Savanna") is, and at all material times hereto was, a limited liability company duly organized and existing under the laws of the State of Florida, with its principal place of business at 8050 NW 90th Street, Medley, Florida.

5. Defendant Odyssey Engines, LLC (hereinafter referred to as "Odyssey") is, and at all material times hereto was, a limited liability company duly organized and existing under the laws of the State of Florida, with its principal place of business in Miami, Florida.  Odyssey was formed on January 11, 2010 with the filing of its Articles with the Florida Secretary of State and has its principal place of business at 8050 NW 90th Street, Medley, Florida.

6. The true names and capacities, whether individual, corporate, associate or otherwise of the Defendants named herein as DOES 1 through 50, inclusive, are unknown to Plaintiffs.  Plaintiffs, therefore, sue these Defendants by such fictitious names and will seek leave of Court to amend their Complaint to show their true names and capacities when the same have been ascertained.

7. Plaintiffs are informed and believe, and based thereon allege, that the Defendants, and each of them, including those alleged herein fictitiously, are the agents co-venturers, joint venturers, co-conspirators, employees or representatives of the other Defendants, and in acting in the manner alleged herein did so with the knowledge, ratification and consent of the other Defendants, and acted in concert with them.  Plaintiffs are further informed and believe, and based thereon allege, that each of the Defendants named herein engaged in wrongful conduct that is a

cause of Plaintiffs' damages, and were co-conspirators of the others, acting within the course and scope of such conspiracy.

## VENUE AND JURISDICTION

8. This Court has subject matter jurisdiction over state law claims under 28 U.S.C. § 1332(a) because the parties are citizens of different states or foreign countries, and the controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

9. This Court has personal jurisdiction over the individual defendants insofar as the individual defendants have consented to jurisdiction by requesting that the court in the Southern District of Florida transfer the action to the Delaware district. This Court has personal jurisdiction over the Corporate Defendants insofar as the Corporate Defendants consented to jurisdiction pursuant to the terms of the subject operating agreements.

10. Venue is proper in this Court under 28 U.S.C. § 1391(b)(3).

## COMMON ALLEGATIONS

**A.     The Introduction.**

11. Beginning in or about 2017, Orbis' representatives, Maxim Shishlyannikov ("Shishlyannikov") and Vincent Ordonneau ("Ordonneau") were introduced to Boyer through mutual acquaintances. Orbis had been informed of the possibility of investing in the aviation industry, and that Boyer and his companies had experience in aviation engine purchase and leasing.

12. Shishlyannikov and Ordonneau flew to Miami, Florida, and met with Boyer at Boyer's business, Odyssey Engines, LLC. Plaintiffs are informed and believe, and based thereon allege, that Boyer operates through a web of entities, including Odyssey Engines, LLC ("Odyssey"), Savanna Leasing, LLC ("Savanna"), JMD Aviation, LLC, Turbine Engine Center, Inc., PCB Aviation Holdings, LLC, Air Transport Technologies, Inc., SL Engines, LLC, Savanna Leasing LLC II, Odyssey Real Estate, LLC, JA Aerocell, LLC, Oscoda Engine Services Corp., Timeco Engine Center, Inc., and AB Financial Services, LLC, amongst others. Plaintiffs were unaware of virtually all of these entities at the time of the discussions between Orbis and Boyer

3

in 2017.

13. According to Boyer, Turbine Engine Center, Inc. and Savanna are subsidiaries of Odyssey. Odyssey is, apparently, merely a holding company. The businesses are structured such that Turbine Engine Center maintains, repairs and overhauls commercial aviation engines which are owned by Odyssey. Savanna owns, or at times leases the engines from third parties, which in turn are leased to commercial airlines.

14. At their 2017 introductory meeting, Boyer introduced himself as the Chief Executive Officer of Odyssey and provided information to Shishlyannikov and Ordonneau relative to his and Odyssey's background in the aviation industry. According to Boyer, Joel Plasco ("Plasco") is the majority owner of many of the entities, including the Defendant entities. Paul Michael Pickett ("Pickett") is the Chief Financial Officer of Savanna and Odyssey. Plaintiffs are informed and believe, and based thereon allege, that Pickett, Plasco and Boyer controlled the receipt, deposit, use, distribution and dissemination of monies received by the various entities, including without limitation Savanna and Odyssey.

15. At their introductory meeting, Boyer toured the Odyssey facilities with Shishlyannikov and Ordonneau, enticing them with information about the companies' successes, and the potential for investing. Orbis, which had no experience in the aviation market, was searching for viable investments, and was interested in investing a portion of Orbis' assets in the aviation industry.

16. At the time of these early 2017 discussions, and in describing Odyssey's background, Boyer, on behalf of Odyssey, informed Plaintiffs that he was managing sixty-five (65) engines, worth approximately $70 million dollars. The presentation and discussions induced Plaintiffs to believe that the Defendants were well capitalized and its assets were substantial to support Plaintiffs' investment. The parties discussed the possibility of Orbis' investing in commercial aviation engines that Odyssey would purchase from third parties for the benefit of the venture, which would own the engines, and that would be placed on lease and managed by Odyssey.

B.   **The Joint Venture**

17.   Orbis was impressed by Boyer's representations, presentation and proposal for Orbis to purchase engines, which would be leased to airlines and managed by Boyer's company, Odyssey.  The Defendants were unknown to Plaintiffs, but the conversation and presentation conveyed to them that they were a legitimate business operation well experienced, and with substantial capital given the extent and nature of the business operations.

18.   The discussions culminated into negotiations concerning a joint venture between Orbis and Odyssey.  The parties negotiated the terms of two (2) joint venture agreements, one between Orbis Cayman and Boyer's company, Savanna.  That joint venture was referred to as Juno Engines Cayman, LLC, and was memorialized in a Limited Liability Company Agreement of Juno Engines Cayman, LLC.  The second joint venture was between Orbis US and Savanna, and was memorialized in a separate joint venture agreement, referred to as Juno Engines U.S., LLC, the terms of which were set forth in a Limited Liability Company Agreement of Juno Engines U.S., LLC.

19.   Specifically, and as identified above, the joint venture between Orbis and Savanna took the form of two entities.  Juno Engines U.S., LLC, created on June 8, 2017, and Juno Engines Cayman, LLC, created on June 19, 2017 (The joint ventures were, and will be herein, collectively referred to as the "Juno" joint venture).  Juno was created for the purpose of the parties' purchase of aircraft engines, with the intent to then lease the engines to certain airlines, and thereafter divide the revenues from the leases.

20.   In the Juno joint venture, Orbis provided the capital and Odyssey, through its subsidiary Savanna, conducted the operations, which involved buying engines, leasing them to airlines, and then sharing the revenues from those leases with Orbis.

21.   Structurally, Orbis owned 100% of the Class A membership interests in Juno, and Savanna owned 100% of the Class B membership interests in Juno.  The Class A members were to receive a return of its contribution through the lease payments.

22.   Plaintiffs, collectively, provided $4.150 million in capital to purchase engines to

lease to the airlines. Orbis Cayman provided $2.9 million dollars, and Orbis US provided $1.250 million in contribution toward the joint venture and purchase of the engines.

23. In or about June 2017, Orbis tendered the capital to Defendants, following which two (2) Pratt Whitney JT8D-219 engines were purchased, and which were supposed to be titled to Juno U.S., and which were ultimately leased to Delta Airlines. In addition, four (4) engines were purchased for the Juno Cayman joint venture, and which were to be titled to Juno Cayman, two (2) Pratt Whitney JT8D-219 engines, and two (2) General Electric/Safran CFM56-3C1 engines. Two (2) of the engines purchased were leased to Indonesia PT Airfast, one (1) engine was leased to Ukraine International, and a final engine was leased to Blue Air Romania.

24. Based upon the relationship between Savanna and the airlines, the Juno joint ventures leased the engines to Savanna, Odyssey's subsidiary. Thereafter, Plaintiffs are informed and believe, and based thereon allege, that Savanna leased two of the engines to the end user, i.e Delta Airlines, and the remaining engines were leased through Juno Cayman, i.e. Indonesia PT Airfast, Ukraine International and Blue Air Romania.

25. Generally, the parties' agreement, and joint venture terms, provided that Orbis would provide the capital for the purchase of the engines. The engines would be owned by the joint venture and then leased to the airlines, and the lease payments would then be paid to a brokerage account for the benefit of the joint venture. The brokerage account was in the name of National Alliance, an Austin, Texas brokerage firm, which would act as the custodian of the funds. The funds would then be paid to the parties of the joint venture, in accordance with their agreed-upon respective interests in the joint venture, as provided in the joint venture agreements.

26. Plaintiffs are informed and believe, and based thereon allege, that National Alliance received a portion of the monies from the leasing of the engines which were the subject of the joint venture, and currently maintains at least, the sum of $300,000. Plaintiffs are further informed and believe, and based thereon allege, that Savanna has access to the National Alliance brokerage account, and the remaining monies deposited into the account. The National Alliance brokerage account was ultimately closed, and funds in the account were not received. However, Plaintiffs

are informed that a balance remains in the National Alliance account, for the benefit of the Juno joint venture. Such monies have not been tendered to the Plaintiffs, although Plaintiffs are entitled to such monies by virtue of the terms of the joint venture agreements, and despite Plaintiffs' demands therefore.

27. In addition to the National Alliance account, certain engine lease payments were made directly to Savanna, at Savanna's financial institutions, including Florida Community Bank (since acquired by Synovus), and possibly First Republic Bank.

28. The limited liability operating agreements for the Juno entities appointed Savanna as the managing member for the joint ventures and limited liability companies, Juno U.S. and Juno Cayman. Savanna was expressly represented to be controlled by Boyer and Plasco, and the CFO was Pickett. The limited liability company agreements provided, respectively:

(a) All Company assets shall be owned by the Company [Section 3.03];

(b) All available cash of the Company, after allowance for all reasonable costs and expenses incurred by the Company and for such reasonable reserves as the Managing Member shall determine (the "Distributable Cash"), shall be distributed, on a monthly basis within thirty (30) days of the end of each calendar month [Section 5.02];

(c) Payment shall be made on a waterfall basis, with Plaintiffs to receive distributions until their Cash Contribution was repaid, plus 1.5% of the Cash Contribution, and then eighty percent (80%) of all amounts after payment of the Cash Contribution and such interest thereon [Section 5.02];

(d) The Managing Member may not sell or exchange of all or substantially all of the assets of the Company [Section 6.02(a)];

(e) The Managing Member may not use of any proceeds of the Cash Contribution for any purpose other than purchasing, repairing, maintaining, servicing, marketing and/or storing the Engines [Section 6.02(k)].

**C.** **The Failure to Pay and Theft of Funds**

29. From in or about June 2017 until approximately September 2017, Savanna made certain distributions to Orbis in accordance with the joint venture agreements and payment waterfall terms. However, beginning in or about September 2017, Savanna and Defendants failed to pay Plaintiffs their portion of the lease revenues from the leasing of the engines, and which were received from the airline clients pursuant to the lease agreements.

30. After failing to receive payments, Plaintiffs made repeated demands of Defendants for compliance with the terms of the joint venture agreements. Despite such demands, Defendants failed and refused to provide any of the proceeds from the leasing of airline engines to third parties. Plaintiffs continued to complain about non-payment, and demanded compliance to pay distributions to Plaintiffs as required under the terms of the joint venture agreements, but Defendants refused.

31. In an attempt to rectify this dispute and amicably part ways, Plaintiffs and Boyer agreed that one of Boyer's other entities, JMD Aviation, would purchase Plaintiffs' interest in the joint venture for $4.568 million dollars. The parties negotiated the terms of a purchase agreement for a lengthy period of time, into June 2018, whereby Boyer, through his entity JMD Aviation, was supposed to purchase Orbis' interests in the Juno joint venture entities.

32. Pursuant to the terms of the proposed purchase agreement, JMD Aviation was required to pay Plaintiffs a combined amount of Four Million Five Hundred Sixty-Eight Thousand Dollars ($4,568,000) ("Purchase Amount") in exchange for all outstanding Class A membership interests in Juno Engines U.S., LLC and Juno Engines Cayman, LLC, currently held by Plaintiffs. JMD Aviation, however, failed to fund any portion of the acquisition. At the same time, Defendants failed and refused, and continue to fail and refuse, to remit any portion of the monies received to Plaintiffs from the leasing of the engines to third party airlines.

33. Plaintiffs are informed and believe, and based thereon allege, that the stated intent to purchase Plaintiffs' interest in the June joint ventures was merely a ruse and delay tactic. After the purchase agreement was executed, JMD Aviation changed course and represented that it did not have the funds necessary to consummate the transaction. Plaintiffs have now discovered that

such representation was false. Indeed, Plaintiffs have discovered that Defendants were securing monies from various third parties and entities, and failing to repay them, much like a *Ponzi* scheme.

34. First, at or about the time in 2018, when Odyssey was supposed to repay Plaintiffs through JMD, Boyer was in the process of obtaining, and ultimately obtained, a loan from Preferred Bank for $8,000,000, which was later increased to $16,000,000. Odyssey informed Preferred Bank that it was utilizing such funds to purchase ten (10) engines from JMD Aviation Holdings, LLC, which was also owned by Boyer and his associates. The purported engines were purchased for $16,000,000. Yet, Defendants informed Plaintiffs at the time that JMD Aviation was without funds, and also that JMD aviation had no assets. Defendants subsequently failed within a year to pay Preferred Bank, which has initiated litigation to collect on its loan.

35. During the same period of time, in February 2018 and March 2018, Defendants Odyssey, Savanna, Boyer, Plasco and their affiliated entities borrowed $25,000,000 from Synovus Bank, as a successor by merger with Florida Community Bank, N.A. Within just slightly over a year after securing that loan, Defendants failed to make payment to the Synovus Bank, which is also now seeking payment and pursuing collection efforts by initiating a lawsuit against Defendants.

36. Even prior to then, Boyer's company is alleged to have defrauded other entities. In 2017, Traderiver USA, Inc. sued CG Miami NDT, LLC, of which Boyer was the president. Such lawsuit, which included claims for Fraud in the Inducement, asserted that CG Miami NDT, LLC misrepresented their intent to deliver proceeds from the sale of engines. Traderiver also alleged that CG Miami NDT, LLC, Boyer's company, "made purposefully and material or false statements of material fact concerning CG Miami and CG Engines' finances, books and records…"

37. Defendants are similarly alleged to have defrauded Aviation Financing, LLC. In the matter of *Integrity Aviation Financing, LLC d/b/a IA&L Aircraft Engine, Leasing, LLC v. Odyssey Engines, LLC*, pending in the District Court of Texas, Travis County, Texas, Case No., D-1-GN-19-000597 (the Integrity Complaint"), plaintiffs there sued Odyssey Engines for "breach of contract, fraud, conversion, and theft by Odyssey." According to the Integrity Complaint, Boyer

admitted that "Odyssey is 'fraudulent document central.'" The facts in the Integrity Complaint are strikingly similar in part to the allegations here, including that "Defendants have kept the money due to Integrity Aviation while continually changing their story."

38. According to the representations made by Defendants, Plaintiffs' funds were to be used to purchase engines for the benefit of the joint venture. As a matter of fact, Plaintiffs delivered over $4.150 million dollars for the purchase of the engines. Plaintiffs, however, are informed and believe, and based thereon allege, that Defendants never purchased engines from third parties, and failed to put title of any engines in the joint venture's name.

39. In addition, and also unbeknownst to Plaintiffs, the engines that were purchased with Plaintiffs' capital were taken out of service, damaged, or are no longer being leased. While two engines remain at Defendants' Odyssey facility, Defendants' admitted that they sold two of the engines, without ever disclosing their intent to do so, for in excess of $1,000,000. Defendants collected those monies, and claim to be in possession of such funds, but intentionally agreed between themselves to retain possession and/or use some monies for their own personal benefit, and to the detriment of the Plaintiffs.

40. In short, Defendants enticed Plaintiffs into investing in the aviation industry, and then secured millions of dollars of Plaintiffs' capital in order to purchase six (6) aircraft engines. After doing so, Defendants made scant payments, and then failed to tender any lease payments or monies whatsoever. Then, and only shortly after Plaintiffs' funds were used to purchase the engines, the leases were terminated, engines were returned, and other engines were sold, all without Plaintiffs' knowledge. Defendants, then, kept all proceeds from the leasing and sale of engines for themselves, failing to remit monies to Plaintiffs and absconding with Plaintiffs' funds.

41. Based upon the conduct and actions of the Defendants, the timing of the purchase of the engines and thereafter failure to remit monies, Plaintiffs believe that the entire transaction was solely intended to defraud Plaintiffs, and secure for themselves and Defendants' own benefit the engines and funds resulting from the leasing of the engines, all to Plaintiffs' detriment. This action, therefore, follows.

## FIRST CAUSE OF ACTION

### FRAUD – INTENTIONAL MISREPRESENTATION

### (Against Boyer, Odyssey, Savanna and DOES 1 through 20)

42. Plaintiffs hereby incorporate, by this reference, each and every allegation set forth in paragraphs 1 through 41, inclusive, as if set forth in full.

43. Beginning in or about early 2017, in Miami, Florida, in an effort to induce Plaintiffs to enter into a joint venture and invest monies in commercial aviation engines with Odyssey that would be placed on lease and managed by Odyssey, Boyer, acting on behalf of Defendants Odyssey and Savanna, and as authorized by Odyssey and Savanna as their agent, orally represented to Plaintiffs, through their representatives Shishlyannikov and Ordonneau, that Odyssey had considerable experience in the aviation industry and was managing sixty-five (65) engines, worth approximately $70 million dollars. The presentation and discussions caused Plaintiffs to believe that the Defendants were well capitalized and its assets were substantial to support Plaintiffs' investment.

44. Defendants further orally represented to Plaintiffs, through their representatives Shishlyannikov and Ordonneau, that the joint venture would invest capital toward the purchase of aircraft engines, and Odyssey, through its subsidiary Savanna, would operate the business, purchase the commercial aviation engines, lease the commercial aviation engines to third party airlines and share the lease revenue between Plaintiffs and Defendants. Defendants further represented that the parties would become members of the Juno entities, with operating agreements providing:

    (a)    All Company assets shall be owned by the Company [Section 3.03];

    (b)    All available cash of the Company, after allowance for all reasonable costs and expenses incurred by the Company and for such reasonable reserves as the Managing Member shall determine (the "Distributable Cash"), shall be

11

        distributed, on a monthly basis within thirty (30) days of the end of each calendar month [Section 5.02];

(c)     Payment shall be made on a waterfall basis, with Plaintiffs to receive distributions until their Cash Contribution was repaid, plus 1.5% of the Cash Contribution, and then eighty percent (80%) of all amounts after payment of the Cash Contribution and such interest thereon [Section 5.02];

(d)     The Managing Member may not sell or exchange of all or substantially all of the assets of the Company [Section 6.02(a)];

(e)     The Managing Member may not use of any proceeds of the Cash Contribution for any purpose other than purchasing, repairing, maintaining, servicing, marketing and/or storing the Engines [Section 6.02(k)].

45.     Moreover, Defendants further orally represented that after the commercial aviation engines were leased to third-party airlines, the lease payments would then be paid to a brokerage account in the name of National Alliance, an Austin, Texas brokerage firm, who would then pay the proceeds to the parties to the joint venture, in accordance with their agreed-upon respective interests in the joint venture, as provided in the joint venture agreements.

46.     At the time of the representations made by the Defendants to Plaintiffs, the representations were untrue, and Defendants knew them to be untrue. Yet, Defendants made these representations with the intention of Plaintiffs relying upon them, and persuading and enticing Plaintiffs to invest in Defendants' venture.

47.     Plaintiffs were ignorant of the facts that were untrue, and were also ignorant of the fact that Defendants did not intend to honor their representations or comply with the terms of the operating agreements, but, instead, intended to take Plaintiffs' capital investment of $4,150,000 for their sole benefit and refuse to share the revenues from the leasing of commercial aviation engines.

48.     For instance, although the engines were purportedly purchased with Plaintiffs' monies, they were never titled to the Joint venture. Plaintiffs are also informed and believe that

12

the engines were not purchased in arms-length transactions with third parties.

49. Moreover, after the engines were purportedly purchased, they were almost immediately returned from lease, were damaged, or were sold by Defendants without Plaintiffs' knowledge. Defendants made few payments to Plaintiffs, despite the terms of the parties' agreements, instead keeping the funds for themselves and Defendants' own use and benefit.

51. Still further, Defendants did not have the infrastructure, capital and assets as represented in order to entice Plaintiffs' investment, but instead were incurring debt without the intention of repaying their joint venture partners and creditors. As reflected and alleged above in paragraphs 34 through 37, during the same period of time that Plaintiffs were providing funds and shortly thereafter, Defendants were incurring debt in excess of $41,000,000, and thereafter defaulted within almost a year thereafter.

52. In reliance upon Defendants representations, Plaintiffs agreed to enter into the Juno joint ventures and make a capital investment of $4,150,000 into the Juno entities, and for the benefit of the Defendants.

53. Had Defendants not made such representations, or had Plaintiffs been aware that the representations were untrue, Plaintiffs would have never entered into the Juno joint ventures, nor would they have made a capital investment of $4,150,000 into the Juno entities.

54. At the time Defendants made such representations to Plaintiffs, Plaintiffs believed them to be true, and reasonably and justifiably relied upon the representations. Defendants expressed their knowledge in the aviation industry, and thereafter informed Plaintiffs that they would use Plaintiffs' funds to purchase airline engines and title them to Plaintiffs, which apparently never occurred. Plaintiffs were also given a tour of Defendants' warehouse and business establishments, and were persuaded that the Defendants were experienced, honest and trustworthy partners.

55. Defendants, however, knew such representations to Plaintiffs were false at the time they were made.

56. Plaintiffs have discovered that Defendants' representations were false, and believe

that the entire investment and representations from Defendants were based upon a *Ponzi* scheme and misrepresentations as to the nature and extent of the business and its operations. Virtually immediately after investing into the business venture, Defendants ceased making payment to Plaintiffs, and thereafter failed altogether, consistent with a *Ponzi* scheme. Moreover, certain engines that were to be titled to Plaintiffs' joint venture were not so vested, and were not owned by Defendants or their affiliated entities.

57. Still further, Plaintiffs have recently become informed that Defendants have been sued in state court and federal court in Texas, Florida and other jurisdictions with respect to the commercial aviation engines. As alleged in this and the other pending actions, Defendants operate a scheme whereby they receive monies or engines from third-parties based upon representations that Defendants will repair and lease the engines and divide the lease revenue with the third-party investors. Part and parcel with Defendants' scheme, Defendants have retained all revenue and refuse to make distributions to the third-parties as required.

58. As a proximate result of Defendants' conduct, Plaintiffs have been damaged in an amount in excess of $4,150,000, but according to proof at trial.

59. Defendants' conduct, as alleged herein, was malicious, oppressive, fraudulent, and despicable, and thereby entitles Plaintiffs to an award of punitive and exemplary damages, all according to proof at trial.

## SECOND CAUSE OF ACTION
### BREACH OF CONTRACT
**(Against SAVANNAH LEASING, LLC and DOES 15 through 50)**

60. Plaintiffs hereby incorporate, by this reference, each and every allegation set forth in paragraphs 1 through 41, inclusive, as if set forth in full.

61. In or about June 2017, Plaintiffs and Savannah entered into limited liability company agreements for the Juno entities.

62. Pursuant to the limited liability company agreements for the Juno entities, Plaintiffs

and Savannah agreed that:

    a. All Company assets shall be owned by the Company [Section 3.03];

    b. All available cash of the Company, after allowance for all reasonable costs and expenses incurred by the Company and for such reasonable reserves as the Managing Member shall determine (the "Distributable Cash"), shall be distributed, on a monthly basis within thirty (30) days of the end of each calendar month [Section 5.02];

    c. Payment shall be made on a waterfall basis, with Plaintiffs to receive distributions until their Cash Contribution was repaid, plus 1.5% of the Cash Contribution, and then eighty percent (80%) of all amounts after payment of the Cash Contribution and such interest thereon [Section 5.02];

    d. The Managing Member may not sell or exchange of all or substantially all of the assets of the Company [Section 6.02(a)];

    e. The Managing Member may not use of any proceeds of the Cash Contribution for any purpose other than purchasing, repairing, maintaining, servicing, marketing and/or storing the Engines [Section 6.02(k)].

63. Plaintiffs performed all conditions, covenants and promises required on their part by the terms and conditions of the operating agreements.

64. Beginning in or about 2017, and continuing thereafter, Savannah breached the terms of the operating agreements by: (a) failing to pay Plaintiffs their portion of the revenues from leasing commercial aviation engines to third parties; (b) misappropriating monies due and owing to Plaintiffs from the revenues from leasing commercial aviation engines to third parties; and (c) selling commercial aviation engines without Plaintiffs' knowledge, consent or disclosure, and then keeping the funds for themselves.

65. As a direct and proximate cause of Savannah's breaches of the operating agreements, Plaintiffs have been damaged in excess of $4,150,000, but according to proof at trial.

66. The contract between Plaintiffs and Savanna includes the right of the prevailing

party to recover attorney's fees incurred in connection with a dispute or breach of the limited liability company agreements.  Plaintiffs will, therefore, seek an award of attorneys' fees incurred herein.

## THIRD CAUSE OF ACTION

## NEGLIGENT MISREPRESENTATION

**(As and Against Boyer, Savanna and Odyssey, and DOES 15 through 50)**

67. Plaintiffs hereby incorporate, by this reference, each and every allegation set forth in paragraphs 1 through 58, inclusive, as if set forth in full.

68. Beginning in or about early 2017, in an effort to induce Plaintiffs to enter into a joint venture and invest monies in commercial aviation engines with Odyssey that would be placed on lease and managed by Odyssey, Boyer, acting on behalf of Defendants Odyssey and Savanna, represented to Plaintiffs that Odyssey had considerable experience in the aviation industry and was managing sixty-five (65) engines, worth approximately $70 million dollars.

69. Defendants represented and proposed a joint venture whereby Plaintiffs would invest capital in the total collective sum of $4,150,000, and Odyssey, through its subsidiary Savanna, would operate the business, purchase the commercial aviation engines from third parties in arms-length transactions, lease the commercial aviation engines to third party airlines and share the revenue between Plaintiffs and Defendants.  Defendants further represented that the parties would become members of the Juno entities, with operating and limited liability company agreements providing:

    (a)    All Company assets shall be owned by the Company [Section 3.03];

    (b)    All available cash of the Company, after allowance for all reasonable costs and expenses incurred by the Company and for such reasonable reserves as the Managing Member shall determine (the "Distributable Cash"), shall be distributed, on a monthly basis within thirty (30) days of the end of each calendar month [Section 5.02];

(c) Payment shall be made on a waterfall basis, with Plaintiffs to receive distributions until their Cash Contribution was repaid, plus 1.5% of the Cash Contribution, and then eighty percent (80%) of all amounts after payment of the Cash Contribution and such interest thereon [Section 5.02];

(d) The Managing Member may not sell or exchange of all or substantially all of the assets of the Company [Section 6.02(a)];

(e) The Managing Member may not use of any proceeds of the Cash Contribution for any purpose other than purchasing, repairing, maintaining, servicing, marketing and/or storing the Engines [Section 6.02(k)].

70. Defendants further represented that after the commercial aviation engines were leased to third-party airlines, the lease payments would then be paid to a brokerage account in the name of National Alliance, an Austin, Texas brokerage firm, who would then pay the proceeds to the parties to the joint venture in accordance with their agreed-upon respective interests in the joint venture, as provided in the joint venture agreements.

71. At the time of the representations made, Defendants knew, or should have known, that the aforementioned representations were false, and made such representations, orally and in writing, without any reasonable grounds for believing them to be accurate or true.

72. At the time the representations were made, Plaintiffs were unaware at the representations made by Defendants were false, and reasonably and justifiably relied upon the representations.

73. In reliance upon such representations, Plaintiffs agreed to enter into the Juno joint ventures and make a capital investment of $4,150,000 into the Juno entities.

74. Had Defendants not made such representations, Plaintiffs would have never entered into the Juno joint ventures and make a capital investment of $4,150,000 into the Juno entities.

75. Plaintiffs have discovered that Defendants' representations were false, and believe that the entire investment and representations from Defendants were based upon a *Ponzi* scheme

and misrepresentations as to the nature and extent of the business and its operations. Virtually immediately after investing into the business venture, Defendants ceased making payment to Plaintiffs, and thereafter failed altogether, consistent with a *Ponzi* scheme. Moreover, certain engines that were to be titled to Plaintiffs' joint venture were not so vested, and were not owned by Defendants or their affiliated entities. Defendants, instead, were amassing debt in excess of $41,000,000 from third parties, with apparently no intention of repaying the debt.

76. Still further, Plaintiffs have recently become informed that Defendants have been sued in state court and federal court in Texas, court in Florida and other jurisdictions with respect to the commercial aviation engines. As alleged in this and the other pending actions, Defendants operate a scheme whereby they receive monies or engines from third-parties based upon representations that Defendants will repair and lease the engines and divide the lease revenue with the third-party investors. Part and parcel with Defendants' scheme, Defendants have retained all revenue and refuse to make distributions to the third-parties as required.

77. As a proximate result of Defendants' conduct, Plaintiffs have been damaged in the amount of $4,150,000, but according to proof at trial.

## **FOURTH CAUSE OF ACTION**

### ACCOUNTING

### **(Against Defendants and DOES 1 through 50)**

78. Plaintiffs hereby incorporate, by this reference, each and every allegation set forth in paragraphs 1 through 77, inclusive, as if set forth in full.

79. Defendants are in possession of the financial books, assets and accounts of Juno Engines U.S., LLC and Juno Engines Cayman, LLC. The assets, the sums of monies withdrawn, commercial aviation engines sold, and the income and expenses of Juno Engines U.S., LLC and Juno Engines Cayman, LLC, are unknown to Plaintiffs and cannot be ascertained without an accounting.

80. Plaintiffs, therefore, demand a full and complete accounting of Juno Engines U.S.,

LLC and Juno Engines Cayman, LLC from June 2017 to the present.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

### AS TO THE FIRST CAUSE OF ACTION

1. For damages in excess of $4,150,000, but according to proof at trial;
2. Consequential damages according to proof at trial;
3. Pre-judgment and post-judgment interest;
4. For an award of exemplary damages;

### AS TO THE SECOND CAUSE OF ACTION

1. For damages in excess of $4,150,000, but according to proof at trial;
2. For pre-judgment and post-judgment interest;
3. For an award of attorney's fees incurred herein;

### AS TO THE THIRD CAUSE OF ACTION

1. For damages in excess of $4,150,000, but according to proof at trial;
2. For pre-judgment and post-judgment interest;

### AS TO THE FOURTH CAUSE OF ACTION

1. For an accounting of the financial affairs of Juno Engines U.S., LLC and Juno Engines Cayman, LLC from June 2017 to the present;

### AS TO ALL CAUSES OF ACTION

1. Court costs incurred herein;
2. For such other and further relief as the court may deem proper.

Date:  June 23, 2020                               SEITZ, VAN OGTROP & GREEN, P.A.

                                                  By: /s/ James S. Green, Sr.
                                                      James S. Green, Sr. D.E. Bar No. 481
                                                      Jared T. Green, D.E. Bar No, 5179
                                                      222 Delaware Avenue, Suite 1500
                                                      P.O. Box 68

>Wilmington, DE 19899
>(302) 888-0600
>
>ECOFF CAMPAIN TILLES LLP
>
>>Lawrence C. Ecoff, Esq. (pro hac vice)
>>Alberto J. Campain, Esq. (pro hac vice)
>>280 S. Beverly Drive, Suite 504
>>Beverly Hills, California 90212
>>(310) 887-1850
>
>Counsel for Plaintiffs

## REQUEST FOR JURY TRIAL

Pursuant to the Federal Rules of Civil Procedure and Local Rules, Plaintiffs ORBIS OPPORTUNITY FUND, LP and ORBIS OPPORTUNITY FUND (CAYMAN), LP demand a trial by jury of all claims so triable.

Date:  June 23, 2020

>SEITZ, VAN OGTROP & GREEN, P.A.
>
>By: /s/ James S. Green, Sr.
>>James S. Green, Sr. D.E. Bar No. 481
>>Jared T. Green, D.E. Bar No, 5179
>>222 Delaware Avenue, Suite 1500
>>P.O. Box 68
>>Wilmington, DE 19899
>>(302) 888-0600
>
>ECOFF CAMPAIN TILLES LLP
>
>>Lawrence C. Ecoff, Esq. (*pro hac vice*)
>>Alberto J. Campain, Esq. (*pro hac vice*)
>>280 S. Beverly Drive, Suite 504
>>Beverly Hills, California 90212
>>(310) 887-1850
>
>Counsel for Plaintiffs